UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-001294

| | |
|---|---|
| FRED NEKOUEE, individually, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| TARGET CORPORATION, a Minnesota corporation; | : |
| | : |
| Defendant. | : |
| _____/ | |

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendant, TARGET CORPORATION, a Minnesota corporation (sometimes referred to as "Defendant"); for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant TARGET CORPORATION owns the real estate and the improvements thereon described as Lot 5, Superior Marketplace Filing No. 3, Recorded January 11, 2000 under Reception No. 2013852 in Plan File # P-50 F-1, No's 22, 23 and 24, County of Boulder, State of Colorado ("the Property").

3.      Defendant TARGET CORPORATION'S store, Target, is located on the Property, with an address of 400 Marshall Road, Superior, Colorado 80027 ("Target").

4.      MICHAELS STORES, INC.'s store, Michaels, is located on the Property with an address of 410 Marshall Road, Superior, Colorado 80027 ("Michaels").

5.      Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of Property.   The Defendant's Property, Target, and Michaels are located in and do business within this judicial district.

6.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

7.      Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

8.      The Property is a shopping center.

9.      The Property is a place of public accommodation.

10.     Target is a grocery store and a sales establishment.

11.     Target is a place of public accommodation.

12.     Michaels on the Property is a sales establishment.

13.     Michaels is a place of public accommodation.

14.     Defendant is responsible for complying with the obligations of the ADA.

15.     The Target and Michaels were constructed on the Property after the year 1998.

16.     Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis, weak limbs and hands, and requires the use of a wheelchair for mobility.

17.      Mr. Nekouee travels to the Longmont-Firestone-Boulder area every three to six

months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

18.     On his way to the mountains and sight-seeing, Fred Nekouee visited the Property which forms the basis of this lawsuit on October 1, 2019; February 4, 2019; May 10, 2019; and March 4, 2020; and he bought goods and sought to avail himself of the goods and services at Property on such dates.

19.     Fred Nekouee visited and bought goods at Michaels on the Property on February 5, 2019; May 10, 2019; October 1, 2019; and on March 4, 2020.

20.     Fred Nekouee visited and bought goods at Target on February 5, 2019 and on May 10, 2019.

21.     Fred Nekouee attended a heavy equipment auction in the Longmont area on October 3, 2018; May 8, 2019; October 2, 2019; and March 4, 2020.

22.     Fred Nekouee visited Rocky Mountain National Park on October 2, 2018.

23.     Fred Nekouee also visited the Longmont, Colorado area from February 3-7, 2019.

24.     Fred Nekouee plans to return to Property to avail himself of the goods and services offered to the public at the Property, Target and Michaels.

25.     The Plaintiff has definite plans to return to the area and to the Property, Target, and Michaels in late September or early October 2020.

26.     The Property, Target, and Michaels are on the way from the heavy equipment auction and dealerships he visits to the mountains and sight-seeing.

27.     The Plaintiff likes the fruit, grocery items, and clothing for sale at Target on the Property.

28.     The Plaintiff plans to return to Target to shop.

29.     The Plaintiff likes to shop at Michaels for personal items and gifts.

30.     The Plaintiff plans to return to Michaels to shop.

31.     For the reasons set forth in paragraphs 17-30 and 44, Fred Nekouee plans to return to Property and to Natural Grocers, Michaels, T. J. Maxx, and Famous Footwear.

32.     The Plaintiff has encountered architectural barriers at the Property.

33.     The barriers to access that the Plaintiff encountered at the Property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access Property, and have impaired his use of the restrooms there.

34.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

35.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

36.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

37.     On his visit to the Property, the Plaintiff encountered excessively steep slopes and changes in level in its parking lot and walking surfaces.

38.     The cross slope of the walking surface in front of Target has a cross slope steeper than 1:48 and steeper than 3.1%.

39.     The running slope of the access ramp in front of Target is steeper than 1:12.

40.     In the parking lot in front of Michaels, the cross slope of the access aisle serving the parking spaces for disabled patrons is steeper than 1:48 and steeper than 3.1%.

41.     The Plaintiff encountered and observed barriers to access in the men's restroom in Target; and so, he also tried to use the women's restroom in Target, in which women's restroom he also encountered and observed barriers to access.

42.     The Plaintiff is deterred from visiting the Property even though he enjoys its goods, because of the difficulties he will experience there until the Property is made accessible to him in a wheelchair.

43.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant' non-compliance with the ADA with respect to the Property as described but not necessarily limited to the allegations in paragraph 50 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

44.     Fred Nekouee desires to visit the Property not only to avail himself of the goods and services available at Property but to assure himself that the Property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the Property without fear of discrimination.

45.     The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

46.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

47.     Physical conditions that exist at the Property are accurately described in each

romanette "(i)" in each lettered subparagraph of paragraph 50 below

48.     Preliminary inspections of Property show that violations of the ADA exist as set forth in paragraph 50 below.

49.     The violations of the ADA that Fred Nekouee personally encountered or observed at the Property include, but are not limited to, those set forth in paragraph 50 below.

50.     At the Property:

**PARKING**

a.   (i) In the parking lot, the parking space for disabled patrons in front of Target with signage indicating it is van accessible, shown in the photographs below, is less than 132 inches wide.   (ii) This van accessible parking space for disabled patrons in front of Target is less than the minimum required width of 132 inches and is only about 107 inches wide, when the width of the access aisle is 60 inches, in violation of Federal Law 2010; ADAAG § 502.2.   (iii) Due to the lack of adequate width, it was difficult for the Plaintiff to unload from and load back into his vehicle in this parking space.   (iv) The action required to restripe this portion of the parking lot is easily accomplishable and able to be carried out without much difficulty or expense.





b.    (i) In the parking lot, a second parking space for disabled patrons in front of Target with signage indicating it is van accessible, shown in the photographs below, is less than 132 inches wide.   (ii) This van accessible parking space for disabled patrons in front of Target is less than the minimum required width of 132 inches and is only about 109 inches wide, when the width of the access aisle is 60 inches, in violation of Federal Law 2010;

ADAAG § 502.2.   (iii) The Plaintiff observed the lack of adequate width of this van accessible parking space, and it deters him from shopping at Target at the Property.   (iv) The action required to restripe this portion of the parking lot is easily accomplishable and able to be carried out without much difficulty or expense.





c.    (i) In the parking lot, the parking space for disabled patrons in front of Target grocery with signage indicating it is van accessible, shown in the photographs below, is less than 132 inches wide.   (ii) This van accessible parking space for disabled patrons in front of Target is less than the minimum required width of 132 inches and is only about 107 inches wide, when the width of the access aisle is 60 inches, in violation of Federal Law 2010; ADAAG § 502.2.   (iii) Due to the lack of adequate width, it was difficult for the Plaintiff to unload from and load back into his vehicle in this parking space.   (iv) The action required to restripe this portion of the parking lot is easily accomplishable and able to be carried out without much difficulty or expense.





    d.  (i) In the parking lot in front of Target, the change in level between the access aisle and the walking surface, shown in the photographs below, is greater than 0.5 inches.  (ii) This change of level is greater than 0.5 inches and is about 1 inch, in violation of Federal Law 2010; ADAAG §§ 502.4 and 303.3.  (iii) While moving in his wheelchair, the Plaintiff encountered this change of level, and it stopped his wheelchair, and he required

assistance to move over it.   (iv) The action required to reduce this change of level is easily

accomplishable and able to be carried out without much difficulty or expense.





e.    (i) In the parking lot in front of Target, the change in level of the walking surface,

shown in the photographs below, is greater than 0.5 inches.  (ii) This change of level is greater than 0.5 inches and is about 1 inch, in violation of Federal Law 2010; ADAAG §§ 502.4 and 303.3.  (iii) While moving in his wheelchair, the Plaintiff encountered this change of level, and it stopped his wheelchair, and he required assistance to move over it. (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.





f.   (i) The cross slope of the walking surface in front of Target grocery on the route to

and from Michaels, shown in the photograph below, is steeper than 1:48 and steeper than

3.1%.   (ii) The cross slope of the walking surface in front of Target grocery is steeper than

1:48 and steeper than 3.1%, in violation of Federal Law 2010; ADAAG § 403.3.   (iii)

While moving in his wheelchair between Target and Michaels, the cross slope of this walking surface made the Plaintiff's wheelchair unstable.  (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.



g.    (i) The transition from the walking surface to the access ramp in front of Target grocery, shown in the photographs below, has a change of level of greater than 0.5 inches. (ii)   This transition from the walking surface to the access ramp in front of Target grocery has a change of level of greater than 0.5 inches and of about 1 inch, in violation of Federal Law 2010; ADAAG §§ 303.3 and 405.4.   (iii) While moving in his wheelchair, the Plaintiff's wheelchair was stopped by this change of level in front of Target grocery, and

he required assistance to move over it.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.





h.   (i) In the parking lot in front of Michaels, the cross slope of the access aisle serving parking spaces for disable patrons, shown in the photograph below, is steeper than 1:48

and is steeper than 3.1%.   (ii) The cross slope of this access aisle is steeper than 1:48 and is steeper than 3.1%, in violation of Federal Law 2010; ADAAG § 502.4.   (iii) This steep cross slope made the Plaintiff's wheelchair unstable.   (iv) The action required to reduce the cross slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.



i.    (i) The cross slope of the walking surface in front of Michaels is steeper than 1:48 and is steeper than 3.1%.   (ii) The cross slope of the walking surface in front of Michaels is steeper than 1:48 and is steeper than 3.1%, in violation of Federal Law 2010; ADAAG § 403.3.   (iii) The cross slope of this walking surface made the Plaintiff's wheelchair unstable.   (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

j.      (i) The running slope of the access ramp in front of the entrance to Michaels, shown in the photograph below, is steeper than 1:12 and steeper than 9.4%.   (ii) The running slope of this access ramp in front of the entrance to Michaels is steeper than 1:12 and is steeper than 9.4%, in violation of Federal Law 2010; ADAAG § 405.2.   (iii) The Plaintiff encountered this access ramp while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce the running slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.



k.      (i) On the walking surface along the route from Target to Michaels, shown in the photograph below, the opening in the drain grate is wider than 0.5 inches.   (ii) This opening in the drain grate on this walking surface is wider than 0.5 inches and is as wide as about 1.25 inches, in violation of Federal Law 2010; ADAAG § 302.3.   (iii) While

moving in his wheelchair, the Plaintiff had to maneuver his wheelchair to avoid getting its wheel stuck in this drainage grate.   (iv) The action required to reduce the width of the openings in this drainage grate is easily accomplishable and able to be carried out without much difficulty or expense.



l.   (i) The access aisle in front of Michaels, shown in the photographs below, connects with the curb instead of a ramp.   (ii) This access aisle in front of Michaels connects with a curb instead of a ramp and does not adjoin with the accessible route to Michaels, in violation of Federal Law 2010; ADAAG § 502.3.   (iii) The Plaintiff used this access aisle

while moving in his wheelchair and had to enter the traffic lane to use the access ramp.

(iv) The action required to relocate this access aisle or to install an additional access ramp

is easily accomplishable and able to be carried out without much difficulty or expense.





**MEN'S RESTROOM IN TARGET**

m.   (i) In the men's restroom in Target, a door pull is not provided on both sides of the door near the latch to the accessible toilet compartment.   (ii) A door pull is not provided on both sides of the door near the latch to the accessible toilet compartment, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on both sides of the door to the accessible toilet compartment, the Plaintiff had difficulty operating the door.   (iv) The action required to install a door pull on both side of the door is easily accomplishable and able to be carried out without much difficulty or expense.

n.   (i) In the men's restroom in Target, the centerline of the where the toilet paper is dispensed from the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of where the toilet paper is dispensed from the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of where toilet paper is dispensed, the Plaintiff could not reach toilet paper from this dispenser from a normal sitting position on the toilet.   (iv) The action required to install a dispenser so that the centerline of where the toilet paper is dispensed is between 7 and 9 inches from the front of the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

o.   (i) In the men's restroom in Target, the flush control for the toilet is not mounted on the open and wide side of the clear floor space.   (ii) The flush control for this toilet is not mounted on the open and wide side of the clear floor space, as shown in the photograph below, in violation of Federal Law 2010; ADAAG § 604.6.   (iii) Due to the location of this flush control, the Plaintiff could not flush the toilet from his wheelchair.  (iv) The

action required to relocate the flush control on the other side is easily accomplishable and able to be carried out without much difficulty or expense.



p.    (i) In the men's restroom in Target, the lavatory drain pipes under the sinks are not fully insulated.   (ii) The drain pipes under these sinks are not fully insulated, as shown in the photograph below, in violation of Federal Law 2010; ADAAG § 606.5.   (iii) Due to the lack of insulation on these drain pipes, the Plaintiff risked skin burns and injury to his legs when he used one of the middle sinks.   (iv) The action required to fully insulate these drain pipes is easily accomplishable and able to be carried out without much difficulty or expense.



q.    (i) In the men's restroom in Target, the coat hook is higher than 48 inches above

the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and is as high

as about 56 inches above the finish floor, in violation of Federal Law 2010, ADAAG §

603.4.   (iii) The Plaintiff tried but could not reach this coat hook to hang up his jacket, and

he observed the height of this coat hook above the floor, and it deters him from shopping

at Target.   (iv) The action required to relocate this coat hook is easily accomplishable and

able to be carried out without much difficulty or expense.

**WOMEN'S RESTROOM IN TARGET**

r.    (i) In the women's restroom in Target, a door pull is not provided on both sides

of the door near the latch to the accessible toilet compartment.   (ii) A door pull is not

provided on both sides of the door near the latch to the accessible toilet compartment, in

violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on both side of the door to the accessible toilet compartment, the Plaintiff had difficulty operating the door.   (iv) The action required to install a door pull on both sides of the door is easily accomplishable and able to be carried out without much difficulty or expense.

s.   (i) In the women's restroom in Target, the lavatory drain pipes under the sinks are not fully insulated.   (ii) The drain pipes under these sinks are not fully insulated, as shown in the photographs below, in violation of Federal Law 2010; ADAAG § 606.5.   (iii) Due to the lack of insulation on these drain pipes, the Plaintiff risked skin burns and injury to his legs when he used one of the middle sinks.   (iv) The action required to fully insulate these drain pipes is easily accomplishable and able to be carried out without much difficulty or expense.



t.    (i) In the women's restroom in Target, the space between the top of the rear wall

grab bar and the bottom of the toilet seat cover dispenser above it is less than 12 inches.

(ii) The space between the top of the rear wall grab bar and the bottom of the toilet seat cover dispenser above it is less than 12 inches, and is only about 6 inches, in violation of Federal Law 2010; ADAAG § 609.3.   (iii) Due to the lack of space between the top of this rear wall grab bar and the bottom of the toilet seat dispenser, the Plaintiff had difficulty using the rear wall grab bar to help transfer from his wheelchair to the toilet.   (iv) The action required to relocate this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

51.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

52.     The discriminatory violations described in paragraph 50 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's places of public accommodation in order to photograph and measure areas to which barriers prevented his access.

53.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

54.     Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42

U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

55.     Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

56.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

57.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

58.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's places of public accommodation since January 26, 1992, then the Defendant are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facilities must be readily accessible to and useable by individuals

with disabilities as defined by the ADA.

59.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

60.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property, Target, and the parking lot, access aisles and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.     The Court issue a Declaratory Judgment that determines that the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____ _____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792; Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*